# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ELIOT ZEKE RAMSBERGER,

      Plaintiff,

v.

                            Case No. 8:25-cv-581-KKM-AAS

JONATHAN CHARLES AVEY,
ST. PETERSBURG POLICE
DEPARTMENT, and CITY OF
ST. PETERSBURG,

      Defendants.

_____

# **ORDER**

Pro se Plaintiff Eliot Zeke Ramsberger brings this Section 1983 action against Police Officer Charles Avey, the City of St. Petersburg, and the St. Petersburg Police Department (SPPD) for Fourth Amendment violations arising out of a police canine attack. *See* 2d Am. Compl. (Doc. 38). The defendants move to dismiss the complaint. *See* MTD (Doc. 39). I grant their motions in part. I dismiss without prejudice—and with leave to amend—the claims against Avey and the City because they are too vague to state a claim and overcome qualified immunity. But I dismiss with prejudice the claims against the SPPD because it is not an entity that can be sued.

## I.    BACKGROUND

On March 10, 2023, Ramsberger "was involved in a single-vehicle accident in St. Petersburg, Florida." 2d Am. Compl. ¶ 8. He briefly left the scene, and upon return "was confronted by Defendant Officer Avey" who, without provocation, screamed " '[p]olice canine, get on the ground' " and "simultaneously unleash[ed] his canine to attack." *Id.* ¶¶ 9–10; Resp. (Doc. 44) at 4. Ramsberger failed to heed the order immediately because he was afraid that dropping down would expose his head and upper body to fatal injuries. *See* Resp. at 4. Ultimately, Ramsberger dropped to the ground and the canine bit his leg. *See id.* Avey shouted "[r]oll over. Don't f[]ing move." *See id.* But Ramsberger could not heed the order as the canine was still attached to his leg. *Id.* The bite lasted for nearly a minute and "result[ed] in great bodily harm." 2d Am. Compl. ¶ 11.

Defendant Officer Avey's bodycam fills in details. Though the footage raises questions about the context of the encounter, it does not clearly contradict Avey's account. *Swinford v. Santos*, 121 F.4th 179, 187–88 (11th Cir. 2024) (affirming the district court's comparison of plaintiff's allegations to bodycam footage at the motion-to-dismiss stage), *cert. denied*, 2025 WL 2824210 (U.S. Oct. 6, 2025). The footage shows Officer Avey and a police canine responding to an incident in a residential neighborhood at night. *See generally*

Ex. A (Doc. 43). Avey rushes into a vehicle, starts driving, and asks (presumably over the radio), "where did you see him hitting the fence?" *Id.* at 0:52–1:41. Avey pulls over and the pair exit the car. *Id.* at 2:06. "About how far down the block did you see him go north?" he asks. *Id.* at 2:33–2:39. The canine, which is leashed, leads Avey as they search through the front and back yards of a residential neighborhood. *Id.* at 2:41–3:57. There are few outdoor lights, and the footage is dark. *Id.* While passing through the backyards of several homes, Avey passes what might be a shed and begins to run. *Id.* at 4:01. Suddenly, Avey yells "police canine!" *Id.* at 4:04. He stops, and the camera turns sideways—whether because Avey fell or crouched to release the canine, it is unclear—then Avey urges "get him . . . get him!" *Id.* at 4:05–4:06.

Ramsberger comes into view. *Id.* at 4:07. He stands in the distance in front of a tall, white, wooden fence with his hands behind his head. *Id.* Avey screams "get on the ground! Get on the f[]ing ground." *Id.* at 4:08. The pair reaches Ramsberger, and the canine attacks his leg as Ramsberger lays down on his back. *Id.* at 4:11. Avey yells, "don't f[]ing move" and calls for re-enforcements, including "a rescue for a dog bite." *Id.* at 4:14–4:23. Avey again tells Ramsberger not to move and then instructs him to roll onto his stomach. *Id.* at 4:23–4:30. Ramsberger objects that he "can't roll if the dog is on my leg." *Id.* at 4:32. Throughout the encounter, Ramsberger remains flat with his hands

3

up. Avey again orders Ramsberger not to move, grabs his hands, and pulls him to roll over. *Id.* at 4:35–4:42. At this point, another person comes into view and helps Avey shackle Ramsberger. *Id.* at 4:45–4:51. After finishing the task, Avey says "you got him," stands up, and says "good boy, good job buddy" to the canine. Ramsberger commands "out." *Id.* at 4:51–4:58. The canine, which remained attached to Ramsberger, backs off, revealing what appears to be a wound on Ramsberger's right thigh. *Id.* at 4:58–5.01. Avey and the canine walk away, and the footage ends.

Two years after the incident, Ramsberger filed this suit under 42 U.S.C. § 1983. *See* 2d Am. Compl. He brings a Fourth Amendment excessive force claim against Officer Avey (Count I). *Id.* ¶ 17. He also brings municipal liability claims against both the City and the SPPD, alleging failure to train, supervise, and intervene. (Counts II and III). *Id.* ¶¶ 21–22, 25–26. The defendants move to dismiss, MTD, and Avey responds, Resp. For the reasons below, I grant the motion in part.

## II.    LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it

demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570).[1] A claim is plausible on its face when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Saunders v. Duke,* 766 F.3d 1262, 1266 (11th Cir. 2014) (applying the pleading standard to an excessive force claim under § 1983). When considering the motion, the

---

[1] The Court notes that the government's insistence that "[t]he Eleventh Circuit imposes upon [] Plaintiffs a heightened pleading standard" that requires specificity "for § 1983 claims against public officials" is incorrect and more than a decade out-of-date. *See* MTD at 10; *Randall v. Scott*, 610 F.3d 701, 709–710 (11th Cir. 2010) (explaining that, since *Iqbal*, there is no heightened pleading standard for § 1983 civil rights cases governed by Rule 8(a)(2); *Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014) (applying *Randall* to an excessive force claim under § 1983).

complaint's factual allegations are accepted "as true" and construed "in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Consideration is limited "to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. at 544.

### B. Qualified Immunity in Individual Officer Suits

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).

To be entitled to qualified immunity, a government official must first prove that he was acting within his discretionary authority at the time of the alleged violation. *See Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003). After a defendant meets this initial burden, the plaintiff must show that (1) the official violated his constitutional or statutory rights and (2) those rights were clearly established at the time the official acted. *See Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017). "When qualified immunity is asserted in the context of a motion to dismiss, [courts] look to the pleadings to see if the

plaintiff has successfully alleged the violation of a clearly established right."

*O'Rourke v. Hayes*, 378 F.3d 1201, 1206 (11th Cir. 2004).

## III.    ANALYSIS

Ramsberger alleges that Avey violated the Fourth Amendment by initiating the canine attack and that the City and SPPD are liable for failure to train or otherwise prevent the incident. 2d Am. Compl. ¶¶ 17, 21–22, 25–26. The defendants respond that Ramsberger fails to state his claims, qualified immunity bars suit against Avey, and the SPPD is not a legal entity subject to suit. *See* MTD at 10–18. I agree that the allegations warrant dismissal because they are too vague to evaluate whether Avey violated a clearly established right. I dismiss all claims with leave to amend the claims against Avey and the City.

### A. Claim Against Officer Avey

Count I alleges that Avey used excessive force in violation of the Fourth Amendment when the canine attacked Ramsberger. 2d Am. Compl. ¶¶ 16–19. Because Ramsberger's allegations are conclusory, he fails to satisfy Rule 8 and overcome qualified immunity. I dismiss the claim without prejudice.

### i.    Incorporation-by-Reference

Before I begin, a clarification. Though "a court generally may not consider matters outside of the pleadings without treating the motion as a

motion for summary judgment," the "incorporation-by-reference doctrine" provides an exception. *Johnson v. Atlanta*, 107 F.4th 1292, 1298 (11th Cir. 2024). Under the doctrine, "a district court may consider evidence attached to a motion to dismiss . . . if the [evidence] is (1) central to the plaintiff's claim; and (2) undisputed, meaning that its authenticity is not challenged." *Swinford*, 121 F.4th at 187–88 (approving a district court's consideration of bodycam footage at the motion-to-dismiss stage).

The defendants ask the Court to consider Avey's bodycam footage in adjudicating the motion to dismiss. *See* Mot. for Leave (Doc. 40); MTD at 2. According to the defendants, Ramsberger consented to submission of the footage. Mot. for Leave at 3. Still, Ramsberger counters that "weigh[ing] video evidence" is inappropriate at this stage of the case and that "attempts to narrate the video evidence [are] factually incorrect and wrong by all means." Resp. at 7.

Consideration of the bodycam footage is appropriate because the footage meets the requirements for incorporation by reference in the Eleventh Circuit. *See Swinford*, 121 F.4th at 187. First, the footage is central to the incident. Though the bodycam does not "clearly depict" the entire encounter due to the lack of light and camera angle, it does show part of the action leading up to the incident and lasts for the entirety of "the relevant conduct." *See id.* at 187. This

includes Avey's questions about the suspect's location, the search through the neighborhood, and the full duration of the bite. *See* Ex. at 0:00–5:01.

Second, Ramsberger does not dispute the authenticity of the footage. Rather, he challenges that the "attempts to *narrate* it" are "factually incorrect." Resp. at 7 (emphasis added). Thus, he contests Avey's description of the footage, not the footage itself. In any event, the footage does not contradict Ramsberger's account. Above all, the bodycam demonstrates that there are knowable facts central to the allegations that are missing from the complaint. But even without the footage, dismissal is warranted because Ramsberger's claims—as currently pled—are conclusory and vague.

### ii.  Qualified Immunity

"Because it is undisputed that [Avey] [was] acting within the scope of [his] discretionary authority" when he pursued and detained Ramsberger, the burden shifts to Ramsberger to defeat the defense of qualified immunity. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007); *see* MTD at 4, 9; Resp (failing to contest that Avey acted within the scope of his authority); *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009) (evaluating a seizure effected by a canine bite).

Thus, Ramsberger must show that Avey violated his constitutional right by using excessive force and that the right was clearly established at the time.

Ramsberger's allegations are too vague to state a claim for excessive force and defeat qualified immunity. I dismiss the claim with leave to amend.

"To establish a Fourth Amendment claim for excessive force, a plaintiff must allege (1) that a seizure occurred and (2) that the force used to effect the seizure was unreasonable." *Corbitt*, 929 F.3d at 1315 (citation modified). Courts assess force under an objective reasonableness standard. *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). Under that standard, courts evaluate the officer's use of force "on a case-by-case basis from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Brown v. City of Huntsville*, 608 F.3d 724, 738 (11th Cir. 2010) (citation modified). This analysis turns on "the facts and circumstances of each particular case," including a non-exhaustive list of factors, such as (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Ramsberger alleges that "[b]y deploying [the] canine against [him] without justification, Defendant Avey used force that was excessive, unreasonable, and in violation of the Fourth Amendment." 2d Am. Compl. ¶ 17. He argues that the attack was unprovoked because he "was clearly unarmed," "non-threatening, and not resisting arrest." Resp. at 4; 2d

Am. Compl. ¶¶ 8–12. Moreover, he contends that Avey failed to warn him sufficiently about the canine and then issued commands that were unfollowable. For example, the order "to roll over and not move at the same time" was impossible given that the "canine was eating the front of [his] upper leg." Resp. at 4. Finally, he insists that Avey should have recalled the canine sooner given Ramsberger's attempts to comply with orders. *See* Resp. at 5.

The amended complaint does not provide adequate detail for to assess whether Avey states a claim.[2] Excessive force is a context-specific analysis, and the complaint is largely devoid of context. To be sure, the government offers little to rebut Avey's argument that the attack was unreasonable. But without knowing more, the Court cannot make the determination. The mere use of force by officers and a resulting injury from an arrest fails to state a claim because there are insufficient facts to conclude that the force used was gratuitous and unnecessary. *See Johnson v. City of Miami Beach*, 18 F.4th 1267, 1272–73 (11th Cir. 2021) (explaining that gratuitous force might involve unnecessary

---

[2] "An evaluation of the reasonableness of the force used is appropriate at [the motion-to-dismiss] stage because 'the question of whether the force used by the officer . . . is excessive is a pure question of law, decided by the court.'" *Robinson v. City of Huntsville*, No. 21-13979, 2022 WL 3867584, at *5 (11th Cir. Aug. 30, 2022) (per curiam) (quoting *Stephens v. DeGiovanni*, 852 F.3d 1298, 1321 (11th Cir. 2017)).

force against a secure suspect who is not resisting and poses no safety threat to the officer).

Thus, to demonstrate a Fourth Amendment violation, Rambserger must allege facts concerning the lead-up to the attack. For example, things such as whether he was evading an officer by flight, why he appeared unthreatening, if he was arrested and whether the charges were dropped, and the extent of his injuries would provide context for the reasonableness of the use and extent of force. *See Dorey v. Hartmann*, 2022 WL 2211246, at *3 (M.D. Fla. June 21, 2022) (noting the facts necessary to assess an excessive force claim); *see also Saunders*, 766 F.3d at 1270 (rejecting qualified immunity and reasoning that "lacerations, injuries to [the plaintiff's] teeth and jaw," and "damage to his left eardrum" refuted the officer's claim that force used was *de minimis*). Ramsberger should also provide more context about the car crash, such as the time and location of the crash, his departure, and his return to the scene.

Related, the lack of facts hinders the Court's ability to determine whether Avey violated a clearly established right. Ramsberger provides some information, including an explanation for why he did not immediately follow commands. Resp. at 4 (explaining that dropping to the ground would have exposed his head to a fatal canine bite); *see Saunders*, 766 F.3d at 1267 (reversing a district court's dismissal of a § 1983 claim on qualified immunity

grounds because the trial court's conclusion that a reasonable officer could have believed that the plaintiff was resisting arrest—and that force was necessary—when the plaintiff lifted his head up off of hot pavement *to avoid being burnt*). Still, the information is incomplete.

Without more context, the Court cannot assess whether Avey's use of force was reasonable or whether Ramsberger's rights were clearly established. *Id.*; *see Edwards v. Shanley*, 666 F.3d 1289, 1292 (11th Cir. 2012) (holding that "clearly established law" prohibited "police officers from allowing a police dog to conduct a five- to seven-minute attack against a person who ran from his car after a traffic stop, where he is lying face down with his hands exposed, no longer resisting arrest, and repeatedly pleading with the officers to call off the dog because he surrenders"); *see also Cooper v. Brown*, 844 F.3d 517, 524–25 (5th Cir. 2016) (holding that police violated a clearly-established right by deploying a canine on a drunk-driving suspect who had initially fled but was not resisting arrest, especially because the officer permitted the canine to bite until the suspect was handcuffed, even though he was already subdued).

Because Ramsberger fails to plead facts sufficient to establish that Avey violated a constitutional right, I dismiss the claim against Avey without prejudice.

### B. Claims Against the City

Ramsberger also brings municipal liability claims against the City of St. Petersburg. Count II alleges that the City, "through policies, practices, and customs, permitted or encouraged . . . excessive force" through "police canines." 2d Am. Compl. ¶ 21. Specifically, the City, through deliberate indifference, "fail[ed] to properly train and supervise officers, including Defendant Avey," *id.* ¶ 22, and this failure caused his injuries, *id.* ¶ 23. Count III alleges that the City "failed to intervene, supervise, or implement corrective measures" even though "[s]upervisory officials and policymakers knew or should have known of repeated instances of excessive force and canine misuse." *Id.* ¶¶ 25–27. Because Ramsberger fails to show a predicate constitutional violation and his allegations are otherwise vague and conclusory, I dismiss the claims without prejudice.

"[M]unicipal entities may be held liable under § 1983 only where 'action pursuant to official municipal policy of some nature caused a constitutional tort.'" *Plowright v. Miami Dade County.*, 102 F.4th 1358, 1370 (11th Cir. 2024) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). To state a claim, a plaintiff must plead that "(1) his constitutional rights were violated; (2) the municipality had a custom or policy that constituted deliberate

indifference to that constitutional right; and (3) the policy or custom caused the violation." *Id.* (citation modified).

As to the second element, a plaintiff meets his burden by "(1) identifying an official policy; (2) identifying an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law; or (3) identifying a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights." *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1229 (11th Cir. 2022).

The "failure to provide adequate training" may qualify as a "policy or custom . . . if the deficiency 'evidences a deliberate indifference to the rights of [the municipality's] inhabitants.'" *Lewis v. City of West Palm Beach,* 561 F.3d 1288, 1293 (11th Cir. 2009). Deliberate indifference means that "the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Id.* (citation omitted). In the absence of other prior incidents, a plaintiff may show indifference "if the likelihood for constitutional violation is so high that the need for training would be obvious." *Id.*

"In order to establish a municipality's liability for an officer's actions, the plaintiff must show that the act is one which the municipality has officially

15

'sanctioned or ordered.'" *Trammell v. Thomason*, 335 F. App'x 835, 845 (11th Cir. 2009) (assessing an allegation that a city approved the practice of warning a suspect and deploying a canine simultaneously) (quoting *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1243 n. 13 (11th Cir. 2003) (per curiam)).

Dismissal is warranted on multiple grounds. First, because Ramsberger fails to plead a predicate constitutional violation, there can be no municipal liability. *See Plowright*, 102 F.4th at 1370. Second, Ramsberger's claims are too vague and conclusory. For instance, he argues that Avey's "lack of training and de-escalation skills" led him to use force beyond what "any reasonable and well[-]trained officer would have done" in the same situation. Resp. at 4–5. But Ramsberger is silent as to the kind or content of the missing training and provides no evidence of deliberate indifference. *See* 2d Am. Compl. ¶¶ 22–23. Likewise, his allegation that the City had a policy to encourage "excessive force and canine misuse" is too vague for the Court to assess. *See id*. ¶¶ 20–27.

In a similar vein, Ramsberger alleges the existence of "a pattern of civil rights violations," but does not name any incidents besides the instant matter. *See id*. ¶ 14; *Craig v. Floyd* County, 643 F.3d 1306, 1310 (11th Cir. 2011) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability against a municipality. A pattern of similar constitutional violations is ordinarily necessary.") (citation modified). A "naked statement

that the [City] 'knew or should have known' " about a practice "is insufficient to satisfy the pleading standard." *Plowright*, 102 F.4th at 1370–71. Accordingly, I dismiss the claims against the City without prejudice.

### C. Claims Against the St. Petersburg Police Department

Ramsberger also brings municipal liability claims against the SPPD, 2d Am. Compl. ¶¶ 21–22, 25–26. SPPD objects that, as a city police department, it "is not a legal entity subject to suit." MTD at 14. Ramsberger acknowledges that "some courts have dismissed municipal police departments," but insists (without citing cases) that other courts "allow [the departments] to remain when pled with the municipality." Resp. at 5.

A defendant must be an entity or individual subject to suit to proceed under § 1983. *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992). Under Federal Rule of Civil Procedure 17(b)(3), the "capacity to sue or be sued is determined" "by the law of the state where the court is located."[3] The SPPD lacks the capacity to sue and be sued under Florida law. *See Faulkner v. Monroe Cnty. Sheriff's Dep't*, 523 F. App'x 696, 701 (11th Cir. 2013) ("Florida law has not established Sheriff's offices as separate legal entities with the

---

[3] The rules vary for natural persons, corporations, and other organizations. *See* FED. R. CIV. P. 17(b).

capacity to be sued."); *Dean*, 951 F.2d at 1214 ("[P]olice departments are not usually considered legal entities subject to suit."); *Lederer v. Orlando Utilities Comm'n*, 981 So.2d 521, 525–26 (Fla. 5th DCA 2008) ("Generally, a municipal department is not a separate legal entity and does not have the capacity to sue or be sued. Examples of such subordinate entities comprising an integral part of a municipality would generally include a police or fire department, planning department or city attorney's office."). Accordingly, the claims against the SPPD are dismissed with prejudice.

## IV.    CONCLUSION

Ramsberger brings § 1983 claims against Officer Avey, the City of St. Peterburg, and the SPPD. The defendants move to dismiss all claims. I dismiss without prejudice the claim against Avey for failure to state a claim and overcome qualified immunity. Similarly, I dismiss without prejudice all claims against the City for failure to state a claim. Finally, I dismiss with prejudice all claims against the SPPD because it is not an entity that can be sued, thus any attempt to amend would be futile. *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019).

Accordingly, the following is **ORDERED**:

1. Defendants' motion to dismiss all claims (Doc. 39) is **GRANTED IN PART**.

18

2. The Second Amended Complaint (Doc. 38) is **DISMISSED**. Count I is **DISMISSED** without prejudice. Counts II and III are **DISMISSED** without prejudice as to the City of St. Petersburg, and with prejudice as to the St. Petersburg Police Department.

3. The clerk shall **TERMINATE** the St. Petersburg Police Department as a defendant from this case.

4. Plaintiff may amend his complaint no later **February 3, 2026**. Failure to do so will result in dismissal of this action with prejudice.

   **ORDERED** in Tampa, Florida, on January 20, 2026.

Kathryn Kimball Mizelle
United States District Judge